NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| GINA ANN MISSAGGIA, | Civil Action No.: 2:16-cv-01166 |
|---|---|
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

Before the Court is Plaintiff Gina Ann Missaggia's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under §§ 216(i) and 223(d) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of Administrative Law Judge Barbara Dunn (the "ALJ") is affirmed.

II. **BACKGROUND**

A. **Procedural Background**

Plaintiff applied for disability insurance benefits on March 28, 2012, alleging disability as of April 1, 2009. (ECF No. 5-2 at 21). The application was denied initially in May 2012, and upon reconsideration in November 2012. (*Id.*). On October 7, 2013, a hearing was held before the ALJ. (*Id.* at 21, 32). The ALJ issued a decision on February 20, 2014 finding Plaintiff was not disabled, as defined by the SSA. (*Id.* at 32 (citing 20 C.F.R. § 404.1520(g))). Plaintiff requested review of the decision and the Appeals Council denied the request on December 28,

1

2015. (*Id.* at 1). On March 1, 2016, Plaintiff instituted this action. (ECF No. 1).

### B. Factual Background

Plaintiff was born on August 12, 1967. (ECF No. 5-2 at 39). She has a high school diploma. (*Id.*). Plaintiff testified that she lives with her mother and brother. (*Id.* at 45-46). Plaintiff reported that her daily activities include making meals for herself, watching television, and taking occasional naps. (*Id.* at 53).

After graduating from high school, Plaintiff held a number of administrative and secretarial positions, where her tasks included answering phones, greeting customers, processing bills and invoices, and other similar office work. (*Id.* at 39-43). Although Plaintiff's work history report indicated that she last worked in April 2009, Plaintiff testified before the ALJ that she last worked in 2008. (*Id.* at 39-40). According to Plaintiff, her "position was finished" in 2008 because "[her] employer] no longer needed [her] there." (*Id.* at 43).

On April 10, 2009, Plaintiff "was injured as a bystander to a bar fight." (ECF No. 9 at 2). Plaintiff testified that as a result, she sustained a "dislocated shoulder, neck pain, lower back pain, [and] right knee and left foot [pain]." (ECF No. 5-2 at 43-44).

On April 11, 2009, Plaintiff sought treatment at the Mountainside Hospital emergency room. (ECF No. 5-7 at 229). At this time, Plaintiff reported multiple pains and body aches as a result of being pushed into a bar and hit by a chair. (*Id.* at 232). Plaintiff's treating physician prescribed her pain medication and instructed that she follow up with her primary care physician. (*Id.* at 240). On May 8, 2009, Plaintiff consulted with an orthopedist, who prescribed physical therapy and pain medication to treat Plaintiff's "[l]eft neck and left shoulder pain." (*Id.* at 242-43). Plaintiff also underwent an MRI, which "revealed cervical disc herniation at C6-7, cervical and lumbar disc bulging at C4-5, L1-2, L4-5[,] and left shoulder supraspinatus tendonitis." (*Id.* at

251). Plaintiff's pain management doctor further prescribed chiropractic treatment, physical therapy, gentle massage, heat, and pain medication. (*Id.* at 252).

In July 2009, Plaintiff met with Dr. Richard Kaul for a consultative examination, complaining of pain in the head, neck, right arm, and lower back. (*Id.* at 255). Dr. Kaul recommended that Plaintiff continue with conservative therapy with her chiropractor. (*Id.* at 256). In September 2009, Plaintiff returned to Dr. Kaul complaining of increased head, neck, and upper extremity pain, as well as numbness and tingling extending into the left upper extremity with some weakness in the shoulder and wrist. (*Id.* at 253). Dr. Kaul recommended that Plaintiff proceed with three cervical epidurals and a series of multiple trigger point injections. (*Id.* at 254).

In December 2009, Plaintiff consulted with an orthopedic surgeon, Dr. Michael Russonella. (*Id.* at 257). Dr. Russonella noted that Plaintiff had cervical and lumbar radiculopathy with sprain, left shoulder symptomatic subacromial impingement with acromioclavicular joint involvement, and rotator cuff tendinosis. (*Id.* at 258). At this time, Plaintiff elected to proceed with conservative means of treatment, including physical therapy. (*Id.* at 259).

After "fail[ing] to respond to a year and three months of conservative care," (*id.* at 367), Plaintiff underwent shoulder surgery in July 2010. (*Id.* at 365-66). After a series of medical consultations, Plaintiff began to show "significant improvement." (ECF No. 9 at 8-9). In November 2010, however, Plaintiff consulted her physician, complaining of pain in her shoulder and lower back. (ECF No. 5-7 at 356). Her physician noted that Plaintiff may have kidney stones and/or exacerbation of a lumbosacral injury resulting in lack of exercise. (*Id.*).

Shortly thereafter, Plaintiff elected to have a cervical epidural spinal injection to relieve pain from worsening cervical myelopathy of C5-C6-C7. (*Id.* at 353-54). Plaintiff reported a 50% improvement in symptoms, but still complained of headaches, back pain, and shoulder pain. (*Id.*

at 348). On February 9, 2011, Plaintiff underwent a second cervical epidural spinal injection. (*Id.* at 344-45). On February 23, 2011, Plaintiff's physician recommended that Plaintiff obtain a third cervical epidural as soon as possible. (*Id.* at 342).

Over the course of approximately the next fourteen months, Plaintiff met with her physician, Dr. Evangelos Megariotis, complaining of pain, stiffness, tenderness, and weakness in her neck, shoulder, arm, and lower back. (*Id.* at 332-43). Plaintiff also reported suffering from headaches, depression, anxiety, and insomnia. (*Id.*). Dr. Megariotis prescribed Plaintiff a number of medications and treatments, and ultimately opined that Plaintiff was "totally permanently disabled." (*Id.* at 332).

## III. <u>LEGAL STANDARD</u>

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL

1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. *See Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. *See id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *See id.* at 262-63. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *See id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *See id.* Fifth, if the plaintiff's RFC is not enough to perform her past relevant work, the ALJ must determine whether there is other work in the national economy that the plaintiff can perform. *See id.*

The evaluation continues through each step unless it is determined at any point that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, and the burden shifts to the Commissioner at step five. *See Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *See id.* at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA

6

and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (ECF No. 5-2 at 23). At steps two and three, the ALJ found that Plaintiff's impairments of cervical and lumbar herniations, status-post lumbar surgery, status-post dislocated left shoulder, anxiety, depression, and migraines were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 4014, Subpart P, Appendix 1. (*Id.* at 23-26).

The ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the exceptions that Plaintiff:

> [C]an occasionally climb ramps/stairs and crouch; never climb ladders/ropes/scaffolds or crawl; has unlimited ability to stoop and kneel; must avoid concentrated exposure to extreme cold and all exposure to workplace hazards; can occasionally perform pushing/pulling with the left upper extremity; [can] occasionally perform overhead reaching with the left arm; and is limited to simple, routine work and occasional contact with coworkers and the general public.

(*Id.* at 26).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for several reasons. (*Id.* at 27-31). At step four, the ALJ found that through the date last insured, Plaintiff was incapable of performing past relevant work. (*Id.* at 31).

Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and concluded that Plaintiff has the ability to work in jobs that exist in significant numbers in the national economy. (*Id.*). The ALJ emphasized that Plaintiff was forty-six years old, which is defined as a younger individual, on the date the application was filed. (*Id.*). A vocational expert ("VE") testified that given all of Plaintiff's individual factors, she would be able to perform the requirements of representative occupations such as envelope addresser, compact assembler, and

eyeglass polisher. (*Id.* at 32). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and found that Plaintiff is "capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy." (*Id.*). Thus, the ALJ concluded that Plaintiff is not disabled under the SSA. (*Id.*).

B. **Analysis**

Plaintiff argues, in support of her contention that the ALJ's decision should be remanded, that the ALJ's hypothetical inadequately considered the treating physician's opinion and, thus, the VE's response to that hypothetical failed to support the ALJ's finding that there is work existing in significant numbers that Plaintiff can perform. (ECF No. 9 at 21).

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). Further, an ALJ must give a treating physician's opinion controlling weight when the opinion is 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir.2008) (alteration in original) (citations omitted); *see also* 20 C.F.R. §§ 405.1527(c)(2), 416.927(c)(2) (stating the same legal standard).

8

Here, the ALJ considered all of the medical evidence and provided an explanation for why she chose to credit the Disability Determination Services physicians over Dr. Megariotis, Plaintiff's treating physician. (ECF No. 5-2 at 30). The ALJ's explanation noted:

> [T]reatment records from orthopedist Evangelos Megariotis, M.D. in May 2012 noted the claimant['s] deficiencies in lifting, walking and physical activities (Exhibit 12F). However, the doctor failed to define such deficiencies. The treatment record also indicated the claimant should perform physical activity, although achieving a balance between exercise and activity (Exhibit 12F). The undersigned does agree that the claimant has limitations with lifting, walking and physical activities. However, there is nothing in the record to indicate she cannot perform at least sedentary work. As such, only some weight is accorded to this finding.
>
> . . . .
>
> [T]he doctor's findings [regarding Plaintiff's limitations] are inconsistent with his treatment notes. In January 2013, the doctor indicated that the claimant was disabled for any type of "vigorous" physical full-time activity due to her shoulder, neck and back pathology (Exhibit 15F). The undersigned notes the doctor only indicated the claimant could not perform "vigorous" physical activity, which does not preclude all activity and is not inconsistent with a sedentary residual functional capacity. In fact, in August 2013 the doctor's treatment records indicate the claimant was advised to increase her exercise, which included physical activities (Exhibit 15F).
>
> Additionally, the doctor's findings of inability to perform fine manipulations or reaching is not consistent with the findings at the consultative examination, wherein the claimant had full grip strength (5/5), normal sensation, and intact finger dexterity. Additionally, her shoulder symptoms were reduced, as she was able to raise her arm in abduction and forward flexion fully to 150 degrees. Muscles were equally distributed between the right and left side, showing no evidence of any disuse. She had no sensory abnormalities in the upper extremities bilaterally and reflexes were readily demonstrated at the biceps, triceps and brachoradialis. The doctor's notes do not indicate any clinical findings with respect to same. Overall, the doctor's extreme limitations are not supported by the record.

(*Id.*).

As detailed in her opinion, the ALJ considered all of the evidence provided by Dr. Megariotis. (*Id.*). Affording his opinions little weight, the ALJ explained in detail the reasons for discounting the evidence that she rejected. (*See id.*). Among these reasons were that Dr. Megariotis's opinions were not supported by the record, were inconsistent with his treatment notes,

9

and were inconsistent with Plaintiff's consultative examination. (*See id.*). For example, the ALJ noted that Dr. Megariotis's treatment notes indicated that Plaintiff "reported reduced pain and stiffness in the left shoulder" and "had significantly improved." (*Id.* at 27). The ALJ also noted that Dr. Megariotis opined in his treatment notes that Plaintiff's pain was "nothing serious," that Plaintiff had a "good response" to epidural blocks, and recommended that Plaintiff "exercise and perform physical activity, although with a balance." (*Id.*). As such, there is no indication that the ALJ "reject[ed] evidence for no reason or for the wrong reason." *See Plummer*, 186 F.3d at 429.

Further, an ALJ is not required to give a treating physician's opinion controlling weight when she finds that opinion is inconsistent with other substantial evidence in the record. *See Johnson*, 529 F.3d at 202. Because the ALJ found that Dr. Megariotis's opinions lacked support in the case record, conflicted with his treatment notes, and contradicted the findings from Plaintiff's consultative examination, she was not required to give his opinions controlling weight. Accordingly, the Court finds that the ALJ's consideration of the medical evidence to be supported by substantial evidence, and Plaintiff's argument without merit.

Finally, the Court also finds that the ALJ's hypothetical adequately considered Plaintiff's credible limitations and, thus, the VE's response to that hypothetical supported the ALJ's finding that there is work existing in significant numbers that Plaintiff can perform. If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation [of the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. *Plummer*, 186 F.3d at 431. Here, as the Court explained above, the ALJ found that Dr. Megariotis's opinion was not supported by and was inconsistent with the physical evidence. Accordingly, the ALJ's hypothetical adequately considered Plaintiff's credible limitations. Therefore, the VE's testimony

regarding other work provided substantial evidence for the ALJ's conclusion.

V. **CONCLUSION**

For the foregoing reasons, the Court will affirm the ALJ's decision. An appropriate order accompanies this Opinion.

DATED: September 20, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**